692 F.2d 1205
 S.A. EMPRESA DE VIACAO AEREA RIO GRANDENSE (VARIG AIRLINES), Appellant,
v.
UNITED STATES of America, Appellee.
Emma Rosa MASCHER; Alfred Rosa; Guido Rosa; Raymond Rosa;
Bruno Rosa; Corido Rosa; and Ernest Rosa,
individually and as Heirs and Legatees
of Elio Rosa, deceased, et
al., Appellants,
v.
UNITED STATES of America, Appellee.
 Nos. 81-5366, 81-5399.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1982.
Decided Oct. 26, 1982.
 
 Robert R. Smiley, III, Smiley, Murphy, Olson & Gilman, Washington, D.C., for appellant.
 John C. Hoyle, Washington, D.C., argued for appellee; Andrea Sheridan Ordin, U.S. Atty., Los Angeles, Cal., Leonard Schaitman, Washington, D.C., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before CHAMBERS, GOODWIN and PREGERSON, Circuit Judges.
 GOODWIN, Circuit Judge.
 
 
 1
 Plaintiffs sued the United States under the Federal Tort Claims Act, 28 U.S.C. Sec. 2671, et seq., for the loss of a Boeing 707 aircraft that crash landed after a lavatory unit caught fire.[1] The Federal Aviation Administration (F.A.A.) had certified that the lavatory unit complied with F.A.A. fire protection standards. Varig alleged that the unit did not comply. The trial court granted the United States summary judgment on the grounds that the certification did not come within California's good samaritan rule and that, even if it did, liability was precluded by the misrepresentation and discretionary function exception clauses of the Federal Tort Claims Act.
 
 
 2
 On July 11, 1973, Varig Airlines Flight 820, a nonstop flight from Rio de Janeiro to Paris, was a few minutes from its scheduled landing at Orly Airport near Paris. Although the flight had progressed without incident, a passenger who used the restroom reported smoke in a lavatory. Within four to six minutes, a fire in the aft lavatories caused thick, black smoke to fill the cabin and cockpit. Because of the smoke, the crew and passengers could not see the exits or each other; the pilots could not see each other or any of the instruments.
 
 
 3
 The pilots then opened the sliding windows of the cockpit and put their heads out in order to make a crash landing in a field near the airport. The plane crash landed six minutes after the smoke had first been discovered. Of a total of 135 persons on board, ten crew members and one passenger survived. The rest died from asphyxiation or the effects of toxic gases.
 
 
 4
 The aircraft had been manufactured fifteen years earlier by Boeing Aircraft and had been sold to Seaboard Airlines which subsequently resold the plane to Varig Airlines. Before Boeing manufactured the plane, its designs, plans, specifications and performance data were inspected and certified as acceptable by the United States government.
 
 Civil Air Regulation 4b.381(d) requires:
 FIRE PROTECTION
 
 5
 "Sec. 4b.381 Cabin interiors. All compartments occupied or used by the crew or passengers shall comply with the following provisions.
 
 
 6
 * * *
 
 
 7
 "(d) All receptacles for used towels, papers, and waste shall be of fire-resistant material, and shall incorporate covers or other provisions for containing possible fires."
 
 
 8
 For purposes of summary judgment, we assume that the lavatory sink unit on the 707 contained flammable material, lacked a cover, and had large holes which made the compartment incapable of containing smoke or fire.[2]
 
 
 9
 Under the Federal Tort Claims Act, the government may be liable in tort only if a private individual would have been liable under "the law of the place where the act or omission occurred." 28 U.S.C. Sec. 1346(b). Here, the United States' inspection of the designs, plans, specifications and performance data of the 707 and certification of the plane all occurred in Los Angeles.
 
 
 10
 An individual inspecting and certifying aircraft design for safety in California would be judged by the rule set forth in Restatement (Second) Torts, Secs. 323 and 324A. Therefore, the United States is to be judged under the same rule. United Scottish Ins. Co. v. United States, 614 F.2d 188 (1979), affirmed this day following remand, 692 F.2d 1209 (9th Cir. 1982).
 
 
 11
 Under the Restatement rule, a defendant may be liable if it negligently performed a service either for the injured party or to another for the protection of the injured party. United Scottish Insurance Co., supra; Ingham v. Eastern Airlines, 373 F.2d 227 (2d Cir. 1967). Under the Restatement, this negligently performed service must have either increased the risk of injury to the injured person or have caused him to rely on proper performance of the service.
 
 
 12
 The United States claims that it was not performing a service and that, in any case, its actions did not increase the risk of injury or cause reliance on their proper performance. The United States contends it was performing a regulatory duty rather than a service and that, unlike an air traffic controller, an F.A.A. inspector is not engaged in operational activities and, therefore, owes no duty to those dependent on his performance.
 
 
 13
 The government cites Clemente v. United States, 567 F.2d 1140 (1st Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). Roberto Clemente was killed in the crash of a private plane in Puerto Rico. His widow sued the United States. She alleged that the F.A.A. was negligent in failing to inform the passengers that the plane was overweight and lacked a proper flight crew. Because only a local F.A.A. directive then required that "[c]lear indication of alleged illegal flight ... be made known to flight crew and persons chartering the service," id. at 1143, n.3, and because there was no indication that anyone had ever relied upon the kind of warning the widow was asserting to be a governmental duty, the First Circuit held that there was no good samaritan duty in the Clemente case.
 
 
 14
 In the instant case, Civil Air Regulation 4b.381(d) specifically requires waste receptacles to be made of fire-resistant material and to incorporate covers or other provisions for containing possible fires. A statute, 49 U.S.C. Sec. 1421, requires that the F.A.A. conduct a comprehensive inspection for compliance with all safety regulations before a certificate of airworthiness will issue. Aircraft purchasers rely upon these inspections.
 
 
 15
 The United States, through the F.A.A., has voluntarily undertaken the inspection and certification of all civilian aircraft. The Federal Aviation Act of 1958, 49 U.S.C. Sec. 1301, et seq., requires the F.A.A. "to promote safety of flight of civil aircraft in air commerce" and to perform its duties "in such manner as will best tend to reduce or eliminate the possibility, or recurrence of accidents in air transportation ...." 49 U.S.C. Sec. 1421. The Act provides for a mandatory certification procedure, 49 U.S.C. Sec. 1423, and the F.A.A. has established design criteria that every aircraft must meet before being certified for flight.
 
 
 16
 Members of the flying public may not know the specific contents of F.A.A. regulations. There is general knowledge, however, that regulations designed to insure optimum safety exist and that the United States inspects each aircraft for compliance. The public knows that the government "grounds" aircraft until questions about safety are resolved. The United States should expect that members of the public will rely on the proper performance by the F.A.A. of its duty to inspect and certify. Under California law, a private person inspecting and certifying aircraft for airworthiness would be liable for negligent inspection under that state's good samaritan rule. It follows that the United States also falls within the rule. Even without reference to the good samaritan rule, we have indicated that an action against the government will lie in a negligent inspection and certification case. Arney v. United States, 479 F.2d 653, 661 (9th Cir. 1973).
 
 
 17
 The United States contends that if it comes under this rule it will be liable for every accident resulting from an activity subject to government safety regulations. This argument is not persuasive. The United States will be liable only when injury has resulted from the negligent performance of its duty. The voluntary assumption of the inspection and certification function carries with it the duty to inspect and certify with reasonable care.
 
 
 18
 Under the Federal Tort Claims Act, the United States is not subject to liability for "[a]ny claim arising out of ... misrepresentation ...." 28 U.S.C. Sec. 2680(h). The government contends that plaintiff's claims are actually actions for negligent misrepresentation.
 
 
 19
 Plaintiffs' claims, however, arise from the negligence of the inspection rather than from any ensuing misrepresentation contained in the resultant certificate. See United Scottish Insurance Co. v. United States, supra. The certification merely reports results of the negligent inspection. Neal v. Bergland, 646 F.2d 1178, 1183-84 (6th Cir. 1981), cert. granted, --- U.S. ----, 102 S.Ct. 2267, 73 L.Ed.2d 1284 (1982); In Re Air Crash Disaster Near Silver Plume, Colorado, 445 F.Supp. 384, 409 (D.Kan.1977). Thus, the United States is not protected from liability by the misrepresentation exception.
 
 
 20
 The United States also argues that the discretionary function exception of the Federal Tort Claims Act precludes liability. The discretionary function exception exempts the United States from liability under the Federal Tort Claims Act for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ...." 28 U.S.C. Sec. 2680(a).
 
 
 21
 The discretionary function exemption was primarily intended to preclude tort claims arising from decisions by executives or administrators when such decisions require policy choices. Dalehite v. United States, 346 U.S. 15, 35-36, 73 S.Ct. 956, 967-68, 97 L.Ed. 1427 (1953).
 
 
 22
 The kind of discretion contemplated by the exemption clause does not exist in certifying compliance with F.A.A. safety regulations. A proper inspection will discover facts. The facts will show either compliance or noncompliance. Aircraft must comply with the regulations in order to be certified. The government conceded in a leading case on the discretionary function exemption, Indian Towing Co. v. United States, 350 U.S. 61, 64-65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955), that the exemption did not apply to lighthouse keepers, whose negligent inspection of lighthouse facilities caused a ship to run aground. The duties undertaken by F.A.A. inspectors are more like those of the lighthouse keepers in Indian Towing than those of the cabinet level secretaries in Dalehite. The United States is not protected from liability under the discretionary function exception to the Federal Tort Claims Act in this case.
 
 
 23
 Reversed and remanded.
 
 
 
 [1]
 The individual plaintiffs are pursuing claims for the loss of life among the passengers. Varig's action against Boeing for damages for the loss of the aircraft was barred by the express waiver of tort liability contained in the original sales agreement of the aircraft in question and agreed to by Varig upon its purchase of the aircraft from an earlier buyer. See S.A. Empresa, etc. v. Boeing Co., 641 F.2d 746 (9th Cir. 1981)
 
 
 [2]
 S. A. Empresa, etc. v. Walter Kidde & Co., Inc., 690 F.2d 1235 (9th Cir. 1982)