[Civ. No. 24998.   Second Dist., Div. One.   Mar. 14, 1961.]

THE PEOPLE ex rel. W. A. SAVAGE, as Real Estate Commissioner, Respondent, v. LOS ANGELES TRUST DEED AND MORTGAGE EXCHANGE et al., Appellants.

Morgan Cuthbertson for Appellants.

Stanley Mosk, Attorney General, Lee B. Stanton and Lynn Henry Johnson, Deputy Attorneys General, for Respondent.

LILLIE, J.—Defendants have appealed from an order granting a preliminary injunction which, broadly stated, prohibits each of them from acting as a real estate broker and/or a real estate salesman, particularly with respect to the buying and selling of trust deeds and mortgages, until licensed by plaintiff, as Real Estate Commissioner of California.[1]

In addition to other pertinent statutory authority, the commissioner has proceeded generally herein under sections 10130 and 10081, Business and Professions Code. Section 10130 provides: "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or real estate salesman within this State without first obtaining a real estate license from the division. . . ." Section 10081 provides: "Whenever the commissioner believes from evidence satisfactory to him that any person has violated or is about to violate any of the provisions of this part . . . he may bring an action in the name of the people of the State of California in the Superior Court of the State of California against such person to enjoin such person from continuing such violation or engaging therein or doing any act or acts in furtherance thereof." It is further provided by section 10081: "In this action an order or judgment may be entered awarding such preliminary or final injunction as may be proper, but no preliminary injunction or temporary restraining order shall be granted without at least five days' notice to the opposite party."

Directed against all defendants named in the title of this appeal, as well as 25 Does, the present action for an injunction was instituted on March 14, 1960; the trial court issued an order to show cause, returnable on March 20, 1960, directed to all the defendants named in the complaint. Following appearances by all the named defendants, either by way of answer or demurrer or both, the trial court on May 20, 1960, sustained a general demurrer interposed by Los Angeles Trust Deed and Mortgage Exchange,[2] denied the prayer for pre-

---

[1] The several defendants were represented by separate counsel below. The second group (for convenience so designated), consisting of defendants David Farrell, O. J. Farrell, Tom Farrell and William F. McGraw, has not filed a brief on this appeal. The first group (consisting of the remaining defendants) has not filed a reply to respondent's brief; through counsel, also, oral argument was waived.

[2] Referred to hereinafter as "Exchange."

liminary injunctions and gave plaintiff 15 days to amend. On June 3, 1960, verified amendments to the original complaint were filed; pursuant thereto, on June 9, 1960, another order to show cause was issued being directed to the same defendants and made returnable on June 20, 1960. On June 20 all of the defendants save Seeger appeared; a demurrer to the complaint as amended and motions to strike therefrom were filed and argued; the demurrer was overruled, the motions to strike denied, and defendants were given 10 days to answer the amended complaint. The following day (June 21) the trial court issued its preliminary injunction imposing the restraints prayed for by the commissioner. Three days later (June 24) notice of appeal was filed. None of the defendants, it is represented to this court, has filed an answer in the trial court to the complaint as amended.

The following is a summary of the material facts, either as reflected by the allegations in the complaint as amended or the verified answer of the first group of defendants (as distinguished from the second group identified in footnote 1, *supra*) to the original complaint.

Defendant Exchange is a California Corporation with the following officers (defendants herein): David J. Farrell, president and a director, O. J. Farrell, secretary-treasurer and a director, Thomas Wolfe, Jr., vice president and a director. The remaining defendants were real estate salesmen employed by Exchange. Prior to September 17, 1959, Exchange held a real estate broker's license through David J. Farrell, as qualifying officer, and the same Farrell, individually, also held a real estate broker's license; on that date (September 17, 1959) the licenses of Exchange and David J. Farrell, individually, were surrendered following the filing of an accusation by the commissioner (Bus. & Prof. Code, §§ 5, 10100 et seq.). Continuously thereafter, although unlicensed to do so, Exchange through its officers and salesmen, for compensation, engaged in the business of buying for purposes of resale, offering to the public, selling and exchanging promissory notes of $10,000 or less secured by first trust deeds and first mortgages upon real property, and promissory notes of $5,000 or less secured by second mortgages or second trust deeds upon real property. In the sales and exchanges of such trust deeds the corporation acted pursuant to written contracts; through its officers and salesmen the corporation also entered into (and performed) collateral contracts for the rendition of services for and on behalf of the purchasers of

the trust deeds, which services included the collection of monies due from the makers of the trust deeds, applying the monies collected to the purchase of other trust deeds and remitting such collections to the holders of the trust deeds. Defendant salesmen, during this same period, solicited funds from prospective purchasers for investment in trust deeds, solicited signatures of prospective customers to the written contracts for the sale of trust deeds, and sold the trust deeds to the investing public.

The corporation maintained offices in downtown Los Angeles, Pasadena, North Hollywood, Beverly Hills and Santa Ana, as well as in San Francisco and Oakland.

The restraints imposed by the preliminary injunction encompass the activities just described; they are effective as to all defendants until appropriately licensed by the commissioner. The form of the decree does not appear to be challenged. The questions presented by the instant appeal are five in number and will be discussed separately; in so doing, we shall consider several appendices in the respective briefs consisting of matters not included in the clerk's transcript—neither party has objected to such augmentation of the record.

First, there were filed in support of the amended complaint, which prayed for the issuance of a preliminary injunction, a certification by a supervising deputy in the office of the Commissioner of Corporations and a declaration by a deputy attorney general both ''under penalty of perjury''; appellants claim it was error for the trial court to permit these documents to be filed, stating that they were ''in doubt as to whether the 'Certification' or the 'Declaration' were additions to the complaint to which (they) would be required to plead.'' The point is without merit. Manifestly such documents were in lieu of affidavits which will support the issuance of a preliminary injunction (Code Civ. Proc., § 527) ; since the addition of section 2015.5 to the Code of Civil Procedure, this method of establishing the existence of a fact is expressly authorized.

Second, it is argued that the order for issuance of the preliminary injunction was ''premature.'' As mentioned earlier, appellants' demurrer to the complaint was argued and overruled on June 20, 1960, appellants being given 10 days to answer; the following day (June 21) the order appealed from was rendered. We agree with respondent that it was proper for the trial court, in the exercise of its discretion, to issue the injunction before the expiration of the 10 days for appellants'

answer. Nothing is found in the governing statute (Code Civ. Proc., § 527) which supports appellants' contention: "An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits, in the other, show satisfactorily that sufficient grounds exist therefor . . . . *No preliminary injunction shall be granted without notice to the opposite party . . .*" (emphasis added). The proviso just emphasized appears to be the only limitation as to time on the power of the court in the premises; nothing is said about a waiting period of 10 days or longer to permit a defendant (as here) to file an answer, although a defendant is permitted by statute to file affidavits in opposition to the granting of the injunction sought—interestingly enough, certain appellants availed themselves of this right upon the original order to show cause but declined to do so with respect to the amended complaint. Too, section 527 has never been amended since 1911; acquiescence in its provisions by the Legislature during the succeeding 50 years is indeed significant. Furthermore, in *Riviello* v. *Journeymen Barbers etc. Union,* 88 Cal.App.2d 499 [199 P.2d 400], where a preliminary injunction was sought, the defendant union filed an affidavit in opposition and also demurred; the demurrer was sustained, plaintiffs given 10 days to amend, and the request for a preliminary injunction denied. Although no mention is made in the opinion of any answer being filed, the appellate court held that denial of the request for an injunction was an abuse of discretion and reversed the order (denying the injunction) with instructions to the trial court to issue such injunction. We hold that the order appealed from was not "premature."

Third, appellants contend that they were not required by law to be licensed as real estate brokers or real estate salesmen at the time of the filing of the original complaint (March 14, 1960). Pointing to the commissioner's memorandum of points and authorities in support of the amendments to the complaint, and a copy of Assembly Bill 80 (attached as an exhibit) which was by declaration "under penalty of perjury" stated to have been enacted into law on May 4, 1960, and effective immediately, appellants argue that it appears therefrom that the commissioner "is relying upon amendments" to the real property loan brokers law which did not become effective until May 4, 1960; they do not deny, however, that the law as amended required them to be licensed on June 3, 1960, when the amended complaint was filed. Say

appellants: "As the Commissioner had no cause of action at the time the compaint was filed, the breath of life could not be breathed into such action by subsequent legislation." An examination of the pertinent legislation, as well as certain matters in the record before us, does not support this contention.

Section 3081.02, Civil Code, as *originally enacted,* defines a real property loan broker as *"a real estate broker,* other than a lender, who for compensation payable by a borrower or lender, either directly or indirectly, or from the proceeds of a loan, negotiates or solicits a prospective borrower or lender, for the purpose of negotiating a loan to be secured by real property; or who in this State as principal or agent engages in the business of buying, selling or exchanging promissory notes, secured by mortgages or deeds of trust on real property, or makes collateral agreements for buying and selling or for the performance of services in connection with said mortgages and deeds of trust, and who engages in such activities as a main or principal business or vocation or maintains a regular place of business where the public may sell, purchase or exchange such promissory notes" (emphasis added). Implicit in the above statute, the language of which is closely followed in respondent's pleadings, is the concept that all real property loan brokers are *a fortiori* real estate brokers. Other portions of the real property loan brokers law are set forth below[3] and are here applicable. In a verified response to the

---

[3]Civil Code, section 3081.01, as originally enacted, provided: "It is unlawful for any real estate broker to act as a real property loan broker within this State without first registering as a real property loan broker with the Division of Real Estate . . ." (Stats. 1959, chap. 1942, p. 4536.)

Civil Code, section 3081.02, *supra,* as originally enacted, provided: "A real property loan broker within the meaning of this article is a real estate broker, . . ." (Stats. 1959, chap. 1942, p. 4536.)

Civil Code, section 3081.03, as originally enacted, provided: "The definition of real property loan broker as set forth in Section 3081.02 does not include the negotiation of loan or loans by a licensed real estate broker in connection with the sale or exchange by him of real property, or the sale or exchange by him of any note or notes made or taken in connection with such transaction." (Stats. 1959, chap. 1942, p. 4536.)

Civil Code, section 3081.04, as originally enacted provided: "Any licensed real estate broker may file an application for registration as a real property loan broker . . ." (Stats. 1959, chap. 1942, p. 4536.)

Civil Code, section 3081.05, as originally enacted, provided: ". . . The provisions of this section shall not be applicable to the negotiation of a loan or loans by a licensed real estate broker in which he does not actually or constructively in any way keep, have charge of, or otherwise handle

original order to show cause, defendant David Farrell, the president of appellant Exchange stated: "Defendant Los Angeles Trust Deed and Mortgage Exchange is engaged in buying and selling promissory notes secured by deeds of trust or mortgages of real property. It acts in these transactions solely as principal. Defendant also enters into collateral contracts with the purchasers of such notes to perform certain services, including the recording of changes of title to trust deeds and the collecting of moneys due under the secured promissory notes. The defendant salesmen are employees of Los Angeles Trust Deed and Mortgage Exchange. As salesmen they solicit customers to purchase secured promissory notes with defendant Los Angeles Trust Deed and Mortgage Exchange . . ."

Thus, it seems clear that appellant Exchange, prior to and after the May 4, 1960, amendments, was a real estate property loan broker, and therefore a real estate broker, and was required to be licensed as such—reference will subsequently be made to the status of the appellant salesmen; as a matter of

---

any of the funds involved in the loan." (Stats. 1959, chap. 1942, p. 4537.)

Civil Code, section 3081.06, as originally enacted, provided: "The registration as a real property loan broker shall expire at the same time as does the applicant's license as a real estate broker. Thereafter the license and the registration shall run for concurrent periods." (Stats. 1959, chap. 1942, p. 4537.)

Civil Code, section 3081.07, as originally enacted, provided: "When a registration as a real property loan broker has been issued, the applicant's real estate brokers license shall be affixed with a distinctive insignia, as designated by the Real Estate Commissioner, to clearly indicate to the public that the licensee is also registered as a real property loan broker." (Stats. 1959, chap. 1942, p. 4537.)

Civil Code, section 3081.08, as originally enacted, provided: "Every person registered as a real property loan broker under this article shall be subject to the disciplinary provisions of Article 3 (commencing at Section 10175) of Chapter 3, Part 1, Division 4, of the Business and Professions Code." (Stats. 1959, chap. 1942, p. 4537.)

In 1960, section 3081.01, Civil Code, was amended to read as follows: "It is unlawful for any person to act as a real property loan broker within this State without first having obtained a real estate broker's license and having registered as a real property loan broker with the Division of Real Estate." (Stats. 1960 [1st Ex. Sess.], chap. 77.) In connection therewith, the Legislature made the following declaration: "By the enactment of the real property loan brokers law (Statutes 1959, Chapter 1942), the Legislature intended to require all persons engaged in the activities defined therein, to be licensed as real estate brokers. By inadvertence of language doubt has been cast upon whether the legislative language accomplished this purpose. It is the purpose of this statute to make clear that by the said 1959 law and now, persons so engaged as real property loan brokers are to be licensed as real estate brokers and registered as real property loan brokers by the Real Estate Commissioner." (Stats. 1960 [1st Ex. Sess.], chap. 77.)

fact, the record discloses that the sole ground for the sustaining of the demurrer to the original complaint was the failure to allege or show that the demurring defendant was not licensed by the Commissioner of Corporations—section 3081.81 exempts from the operation of the real property loan brokers law certain persons licensed by that official. Furthermore, assuming that appellant Exchange was not required to be licensed until after the effective date of the amendments, the validity of the injunction rendered on June 21, 1960, would not be affected since it was issued pursuant to verified amendments to the complaint filed June 3, 1960, and all of the allegations of the original complaint are realleged in the amendments as of the date of such amendments. The case of *California Farm & Fruit Co.* v. *Schiappa-Pietra,* 151 Cal. 732 [91 P. 593], is cited by appellants for the principle that a complaint speaks as of the time it is filed; under the doctrine of relation back pertaining to amended pleadings, an amendment to a complaint is deemed to be a statement of the facts existing at the commencement of the action *unless from the facts alleged or otherwise the contrary appears* (39 Cal.Jur.2d, Pleading, § 261). Too, this being an equitable proceeding "the court may consider the facts as they existed at the time of trial so that the interests of justice may be subserved." (*Rosicrucian Fellowship* v. *Rosicrucian etc. Church,* 39 Cal.2d 121, 135 [245 P.2d 481].)

■ As to the status of appellant salesmen, it was contended below (although not argued here) that by legal definition a real estate salesman is one who works for a licensed real estate broker (Bus. & Prof. Code, § 10132.1); therefore, since Exchange was not licensed, its salesmen could not be real estate salesmen. The point is a tenuous one and is answered by the equitable maxim, "That which ought to have been done is to be regarded as done . . ." (Civ. Code, § 3529). Appellant salesmen were performing acts defined as duties of real estate salesmen (Bus. & Prof. Code, § 10132.1, *supra*); they were properly so regarded, and enjoined, by the trial court.

■ Next, appellants complain that the preliminary injunction is inconsistent with the record in that it forbids them to act as *real estate brokers,* whereas the complaint and amendments thereto allege that appellants were acting as *real property loan brokers.* As heretofore pointed out, all real property loan brokers are by legal definition real estate brokers and real estate salesmen—the terms are used interchangeably; further-

more, the record does not sustain appellants' assertion as to the matters set forth in the complaint and amendments thereto.

Appellants' next point challenges the constitutionality of the governing legislation; it is said to be "arbitrary and capricious, resting on no reasonable or substantial difference between the classes." They further assert: "Dealers in trust deeds are not engaged in the real estate business. Their activity has nothing in common with the real estate business," concluding that it is unconstitutional to require them to have the skills of a real estate broker. Although the claim of unconstitutionality is made for the first time and is therefore not open to review (*Buckmaster* v. *Silva,* 103 Cal.App.2d 335, 338 [229 P.2d 799]), we shall consider the contention nonetheless. In our opinion the classification here is quite valid; we cannot overlook the commonplace that real estate brokers act as intermediaries in the purchase and sale of real estate; since very few of such transactions are for cash, they are usually financed by mortgages and deeds of trust; also, the arranging of such mortgages and deeds of trust is, and has been for many years, one of the peculiar services of the real estate broker. One of the chief skills required of a real estate broker is the ability to appraise real estate with an expert knowledge of the market prices of the various types of real estate; anyone who sought to engage as a principal vocation in the buying and selling of real estate without those skills would be a menace to the real estate industry. Appellants themselves have pointed to the intimate relationship between dealers in trust deeds and the real estate industry; thus, an affidavit filed by appellant David Farrell in opposition to the original order to show cause states: "Affiant organized LATD&ME and has caused it to be engaged in business for the purpose of meeting an economic need and necessity in connection with the financing of residential properties. This economic need and necessity was demonstrated under the following circumstances. Prior to 1955 affiant personally acquired some trust deeds in connection with a personal investment transaction in real estate, and later, in seeking to liquidate those trust deeds, he learned that there was no established market place where trust deeds could be either purchased or sold. He further discovered, in connection with his efforts to liquidate the trust deeds which he had so acquired, that there was only what might be described as a 'jungle market' in trust deeds, particularly second trust deeds. Inquiring further,

affiant learned that Savings and Loan Associations, and Banks, were by law generally prohibited from dealing or acquiring second trust deeds. He also found that about the only place available to a person interested in either buying, selling, or dealing in second trust deeds was the classified sections of the newspapers. Affiant further learned that the going rate or price which the holder of a second trust deed could expect to receive on the sale or liquidation of it, was no more than 50% of the sum secured by the trust deed. Fifty percent was all that a person could expect to receive from such a trust deed, even though the trust deed might be safely and adequately secured. Affiant also learned that in most transactions, where homes were acquired by young married couples, the down payment received by the builders or owners was insufficient to finance the purchase of the use of a first trust deed alone, and that second trust deeds were essential to complete such financing. The builders of tract houses and other residential properties were compelled to take second trust deeds in order to consummate sale transactions, and to look to the liquidation of said second trust deeds for the purpose of cashing out such profit they might have in the transactions. These builders would accordingly increase the sale price of such residential properties so that they would receive what they considered to be a normal and proper profit when the second trust deed so acquired by them had been sold for 50% of its face value. In every case it was the purchaser or purchasers of the residential properties who were necessarily burdened by the increased cost of their homes by reason of these conditions.''

In 1955, pointing out the evils it sought to remedy, the Legislature declared that dealers in trust deeds upon real estate were real estate brokers: ''A recent opinion of the Attorney General (No. 54/82) holds that promissory notes referred to in Section 25102 of the Corporations Code are securities within the meaning of the Corporate Securities Law and if offered to the public are not exempt from the law. The person making such an offer to the public is held in the opinion to be a security broker. This has been neither the practice nor the understanding of persons engaged either in the securities or the real estate business. Transactions in such promissory notes relating to real estate always have been conducted by real estate brokers, and not by security brokers. It is the practice of the public having such promissory notes to buy or

sell to go to real estate brokers. As a result of the opinion of the Attorney General a divided authority exists as between the Division of Real Estate and the Department of Corporations and a cloud is placed upon the enforcement of the law. If established practices are in violation of law as interpreted by the Attorney General, then it will be necessary for the State to require dual licensing of many thousands of real estate licensees. Not to immediately alter the law as above proposed would impose a great hardship on the public, the real estate brokers and the departments involved.'' (Stats. 1955, chap. 1792, p. 3308.)

''Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason.'' (*In re Herrera,* 23 Cal.2d 206, 212 [143 P.2d 345].) Appellants here have made only a brief and token attack on the classification in question; it is unconvincing and unsound.

Finally, appellants make reference to a pending administrative case involving appellant Exchange, David Farrell, its president, David Farrell, individually, and Oliver Joseph Farrell; it is contended that the commissioner cannot proceed against them herein until the administrative case is concluded. The contention is without merit. It is suggested that the commissioner has adopted contradictory positions; thus, in the administrative case he seeks to revoke the licenses of the appellants named in the accusation, while in the present proceeding he asserts that the party defendants are unlicensed. Only three of the present appellants, it appears, were named in the accusation—hence, as to the remaining appellants the commissioner's position could not be contradictory; but his position is not contrary even as to the appellants in the administrative case. That action (revocation of licenses) was commenced in June 1959; on September 17, 1959, before any hearing was had, Exchange and David Farrell voluntarily surrendered their licenses. By section 10103, Business and Professions Code, it is expressly provided that the commissioner may proceed to a decision even though the license is surrendered; the former licensee is regarded as a constructive licensee for the purpose of retaining jurisdiction with the commissioner. Appellants cite *Lynn* v. *Duckel,* 46 Cal.2d 845 [299 P.2d 236], and *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], for the proposition that the commissioner cannot proceed in the present matter until

all administrative remedies have been exhausted. The cited cases, however, pertained to private persons seeking to invoke judicial action against a public official; here a public official is seeking judicial action against private persons to end a violation of law. The Real Estate Commissioner of California is expressly given several means of ending law violations within his particular jurisdiction. Thus, he may seek a criminal complaint (Bus. & Prof. Code, § 10081); he may seek an injunction (Bus. & Prof. Code, § 10081) or he may issue a cease and desist order (Bus. & Prof. Code, § 10084). Which remedy (or remedies) to pursue in a given case is left to the sound discretion of the commissioner. Where the Legislature has desired that the commissioner proceed administratively in the first place, it has so declared: "Before denying, suspending or revoking any license issuable or issued under the provisions of this part, the commissioner shall proceed as prescribed by Chapter 5 of Part I of Division 3 of Title 2 of the Government Code, and the commissioner shall have all the powers granted therein." (Bus. & Prof. Code, § 10100).

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.