[Civ. No. 15468. Third Dist. July 20, 1976.]

RICHARD W. RYLANDER et al., Plaintiff and Appellant, v. ROBERT W. KARPE, as Commissioner, etc., Defendant and Respondent.

COUNSEL

Vantassell, Sullivan & Vantassel and Joseph M. Fornasero for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Edna R. Walz, Deputy Attorney General, for Defendant and Respondent.

OPINION

PARAS, J.—Pursuant to Business and Professions Code section 10176, subdivision (g),[1] the California Real Estate Commissioner suspended the real·estate broker's license of Rylander & Company Realtors, Inc., a corporation (hereafter "petitioner"), for a period of 15 days. A petition for a writ of administrative mandamus was then filed to test the validity of the commissioner's decision. This appeal was filed after the superior court denied the petition. The contentions on appeal are:

(1) That the trial court erroneously interpreted section 10176, subdivision (g);

(2) That petitioner's conduct was outside the purview of the proscriptions of section 10176, subdivision (g).

The facts are not in dispute. Petitioner obtains listings to sell homes. On six particular occasions during 1972, petitioner found willing buyers for six·of its listed homes and arranged or procured FHA or VA loans for these buyers from Lomas and Nettleton, a mortgage broker (hereafter "lender"). In each of the six transactions, petitioner received a commission from the seller for services rendered in negotiating the sale of the property. Each seller paid loan discount points and each buyer paid a loan origination fee, payments of both of which were disbursed to the lender out of escrow.

After the close of escrow in each transaction, the lender paid to petitioner an amount equal to the loan origination fee, as consideration for placing the loan with the lender and for subsequently preparing a

---

[1]Unless otherwise noted, all section references are to the Business and Professions Code.

loan application package.[2] Petitioner never informed any of the sellers, either orally or in writing, that it would receive such compensation in connection with the loans.

An amended accusation charged petitioner with having obtained a secret profit in violation of section 10176, subdivision (g).[3] An administrative hearing was held. The hearing officer filed a proposed decision to the effect that there were no grounds for disciplinary action against petitioner, because the loans were procured after, rather than "prior to or coincident with," the signing of any agreement evidencing the meeting of the minds of seller and buyer.

The commissioner rejected the hearing officer's proposed decision and filed his own. He concluded that the payments which petitioner received from the lender constituted " 'undisclosed compensation' " within the meaning of section 10176, subdivision (g), and required disciplinary action. This proceeding followed.

I

In articulating its contentions, petitioner proposes to divide section 10176, subdivision (g), into two distinct proscriptions. The wording of the first such proscription is suggested to be "The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit," while the second such proscription is characterized as containing the remaining words of the section. In so doing, the petitioner of course deems the qualifying language beginning with "under any agreement" inapplicable to the first proscription.

[2]For the sake of brevity, we shall hereinafter refer to such payment to petitioner as a "loan fee."

[3]Section 10176, subdivision (g), provides in pertinent part, as follows:

"The commissioner may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of the following:

"(g) The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit or the failure of a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation, commission or profit under any agreement authorizing or employing such licensee to do any acts for which a license is required under this chapter for compensation or commission prior to or coincident with the signing of an agreement evidencing the meeting of the minds of the contracting parties, regardless of the form of such agreement, whether evidenced by documents in an escrow or by any other or different procedure."

We do not agree. While the construction advocated by petitioner is possible, it is highly strained. A careful reading of the statute discloses that it is far more reasonable to construe the qualifying language (beginning with "under any agreement") as applying to both preceding alternative phrases, to which it is equally pertinent. (*Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 659-660 [82 P.2d 3, 118 A.L.R. 486].) Moreover, as hereinafter noted, petitioner's construction is not consonant with the intent of the Legislature in enacting section 10176, subdivision (g); and in considering the words of a statute, we read it in light of both the objective it seeks to achieve and the evil it seeks to avert. (*People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400].)

## II

Section 10176 is part of the Real Estate Law. (Bus. & Prof. Code, § 10000 et seq.) A key purpose in enacting the Real Estate Law was to upgrade the standards of the profession and also to insure, as far as possible, that real estate brokers and salesmen will be honest and truthful with their clients. (*Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901]; *de St. Germain* v. *Watson* (1950) 95 Cal.App.2d 862, 867 [214 P.2d 99].) Certain practices in which brokers had engaged before the passage of the law, although neither illegal nor unethical, were nevertheless prohibited in the interests of protecting the public. (*de St. Germain* v. *Watson, supra*, at p. 867.)

The practice involved here is not however one of them. Payment of the loan fee caused no harm to the sellers, petitioner's employers, for they neither paid any part of it nor suffered any reduction of their sales proceeds because of it; on the contrary, by assisting the buyers with their loans and loan processing and thereby abetting the consummation of each sale, petitioner benefited its employers in the process of earning the loan fee. The existence of a similar benefit to the buyers, and to the lender, cannot be doubted. Consequently we have no reason to presume either a statutory disapproval of such a practice or a statutory insistence upon its prior disclosure; the language of section 10176, subdivision (g), must fairly show it.

The statute is not a paragon of clarity. We note, however, that it prohibits compensation unrevealed to the "employer" of the licensee, and the parties agree that the employer is the seller. We note further that it prohibits nondisclosure of "compensation, commission or profit *under*

*any agreement authorizing or employing such licensee* to do any acts for which a [real estate licensee's] license is required" (italics added), i.e., a listing agreement. We note finally that the "claiming or taking" of a secret profit or the "failure . . . to reveal" such profit must take place "prior to or coincident with the . . . meeting of the minds" of seller and buyer; obviously the failure to reveal a profit presupposes the licensee's knowledge of and an intention to take such profit before or at the time the sales contract is made.

■ Relating these observations to the facts of this case, the evidence indeed shows that the sellers were not informed of a claiming or taking of a loan fee. But construing the statute's language realistically, sensibly, and reasonably, the loan fee was not a profit "under" the several listing agreements; the loan fee was generated by, and therefore obtained "under," separate later agreements involving the lender and petitioner (and perhaps also the buyers), but not the sellers. Accordingly, such a profit is not one whose revelation to the sellers is required by the statute. Moreover the loan fee must be claimed or taken, or undisclosed with knowledge that it will be claimed or taken, prior to the sales contract; there is no evidence that before or at the time the sales contracts were executed, it was so claimed or taken or that petitioner knew that it would ultimately be forthcoming. It is argued that since the sales contracts (deposit receipts) refer to Federal Housing Administration or Veterans Administration financing, petitioner knew that it would arrange for it and be paid a loan fee. This does not follow, for it presumes that in no case does such financing come about without the particular real estate broker or agent arranging for it; we have no reason or basis for such a presumption. ■ The accusation in the disciplinary proceedings had to be proved by the accuser, not disproved by the petitioner; and the evidence is lacking. (Evid. Code, §§ 500, 520.)

The judgment is reversed, with directions to the trial court to issue the writ, in accordance with this opinion.

Regan, Acting P. J., and Evans, J., concurred.

A petition for a rehearing was denied August 9, 1976.