[Civ. No. 22497. Third Dist. Jan. 11, 1984.]

THE STATE OF CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
MARK PERRY et al., Real Parties in Interest.

## COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Michael Franchetti and Nelson Kempsky, Chief Deputy Attorneys General, Willard A. Shank and Richard D. Martland, Chief Assistant Attorneys General, Marvin Goldsmith, Assistant Attorney General, Seward L. Andrews, Jr., and James M. Schiavenza, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

William D. Kopper for Real Parties in Interest.

## OPINION

SIMS, J.—

### FACTUAL AND PROCEDURAL HISTORY

Petitioner State of California is a defendant in a civil action pending in respondent Superior Court of Sacramento County.[1] In that action real parties in interest (hereafter plaintiffs) are suing defendants George W. Artz, Meramonte, Inc., a California Corporation, and petitioner. Petitioner filed a general demurrer to the complaint on October 22, 1982, which was overruled by respondent court on December 14, 1982.

---

[1]Mark Perry et al., v. George W. Artz et al., Sacramento County Superior Court No. 305075.

Petitioner thereafter filed this writ proceeding alleging that respondent acted in excess of its jurisdiction in overruling the demurrer. We issued an alternative writ of prohibition.

The complaint, filed by plaintiffs on behalf of themselves and a class, alleges as follows:[2]

Defendant George W. Artz is president and principal stockholder of defendant Meramonte, Inc., Artz and Meramonte, Inc., operate a real estate business under a license issued by petitioner's Department of Real Estate. On or about June 7, 1979, defendant Artz entered into an agency agreement with Bruce Stuart, whereby Stuart would operate a property management business in Davis known as Rental Services. Rental Services was to be a subsidiary of Meramonte, Inc. Defendants Artz and Meramonte, Inc., provided Stuart with a branch license which Stuart posted on his wall. In December 1981, Stuart fraudulently told plaintiffs funds were needed for advanced maintenance and management fees to manage plaintiffs' rental properties, and in reliance on Stuart's misrepresentations, plaintiffs paid substantial sums of money to Stuart.

Before his death in February of 1982, Stuart converted to his own use funds which class members paid to him in trust. These funds were to be used for maintenance of class members' real property and to refund tenants' security and cleaning deposits.

Plaintiffs' claims against petitioner are set forth in their fourth and fifth causes of action.

In their fourth cause of action, plaintiffs allege as follows: In February of 1980, David Robinson filed a verified complaint with petitioner's Real Estate Commissioner and/or Department of Real Estate (hereafter collectively commissioner)[3] alleging inadequate supervision by Artz and Meramonte of their agent, Stuart. Robinson's complaint also alleged irregularities in Stuart's trust accounts. Petitioner took no steps to investigate Robinson's allegations despite a statutory duty to do so. As a proximate result of petitioner's failure to investigate, plaintiffs lost all funds entrusted to defendants and Stuart.

---

[2]Because the petition asks us to review a ruling on a demurrer, we accept as true those factual allegations which are properly pleaded in plaintiffs' complaint. (See *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

[3]The Real Estate Commissioner is the chief officer of the Department of Real Estate, located within the Business and Transportation Agency. (Bus. & Prof. Code, § 10050.) We refer to the commissioner and the department collectively as commissioner. (See *Norman* v. *Department of Real Estate* (1979) 93 Cal.App.3d 768, 772 [155 Cal.Rptr. 715].)

In their fifth cause of action, plaintiffs allege: Nearly two years after the Robinson complaint, on November 2, 1981, Rebecca King filed a verified complaint with the commissioner making substantially the same allegations that Robinson had made. The commissioner then investigated and found the irregularities alleged but never informed plaintiffs of his findings, although he did inform defendants. Plaintiffs subsequently paid additional funds to defendants and Stuart, which were also converted by Stuart.

Plaintiffs plead that the commissioner had a duty to monitor Stuart's activities and to warn them of his findings regarding defendants' mishandling of trust funds and that their losses were the proximate result of the commissioner's negligent failure to perform these duties.

Petitioner demurred generally to plaintiffs' complaint, claiming that (1) the duty to investigate complaints against real estate brokers is discretionary, and failure to carry out discretionary acts is shielded by governmental immunity; (2) the commissioner's alleged failure to investigate plaintiffs' claims cannot be the proximate cause of plaintiffs' harm as a matter of law since it would be speculative to guess as to what, if any, action the commissioner would have taken against defendants following an investigation; and (3) the commissioner owes no duty to warn potential victims of improprieties revealed in his investigations; thus, a decision not to warn in a given instance is merely a discretionary act shielded by governmental immunity. The trial court overruled the demurrer, and this petition followed. We issue a peremptory writ of mandate directing the trial court to sustain the demurrer.

DISCUSSION

I

We first address petitioner's fourth cause of action, premised on the commissioner's failure to investigate Robinson's complaint.[4]

Petitioner claims it is immune from liability by virtue of the Government Tort Claims Act of 1963. (Gov. Code, tit. 1, div. 3.6, §§ 810-996.6.) Pe-

---

[4]Petitioner cannot obtain review of the trial court's order overruling the demurrer by direct appeal. (*Harmon* v. *DeTurk* (1917) 176 Cal. 758, 761; *Morris* v. *Berman* (1958) 159 Cal.App.2d 770, 797; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 64, p. 4078.) Petitioner's eventual remedy of appeal from the final judgment when rendered is clearly inadequate; therefore, relief by extraordinary writ is an appropriate remedy where, as here, it is desirable that an important jurisdictional question presented by the defense of governmental immunity be speedily determined. (*County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 481 [105 Cal.Rptr. 374, 503 P.2d 1382]; *People* v. *Superior Court* (1947) 29 Cal.2d 754, 756 [178 P.2d 1, 40 A.L.R.2d 919]; see 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 52, pp. 3826-27.)

titioner notes that tort liability of public entities is now governed exclusively by statute. (Gov. Code, § 815; see *Gonzales* v. *State of California* (1972) 29 Cal.App.3d 585, 590 [105 Cal.Rptr. 804]; *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 809 [75 Cal.Rptr. 240]; *Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655, 660 [69 Cal.Rptr. 788].) Government Code section 815 creates a general governmental immunity "Except as otherwise provided . . . ." One of the provisions "otherwise" creating an exception to the general rule of immunity is Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

■ Government Code section 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity: (1) an enactment must impose a mandatory, not discretionary, duty (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 907-909 [136 Cal.Rptr. 251, 559 P.2d 606]); (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability (see *Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 619-620 [188 Cal.Rptr. 205]; *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, 656 [130 Cal.Rptr. 230]); and (3) breach of the mandatory duty must be a proximate cause of the injury suffered. (See *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 707-708 [141 Cal.Rptr. 189]; see generally Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) §§ 2.41-2.48, pp. 93-107.)

■ Plaintiffs contend that a mandatory duty to investigate is established by Business and Professions Code section 10176, which provides in pertinent part that "The commissioner [of real estate] *may,* upon his own motion, and *shall,* upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, . . . ." (Italics added.)[5] We agree.

---

[5]Business and Professions Code section 10176 provides in its entirety: "The commissioner may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following:

"(a) Making any substantial misrepresentation.

"(b) Making any false promises of a character likely to influence, persuade or induce.

"(c) A continued and flagrant course of misrepresentation or making of false promises

Section 19 of the Business and Professions Code provides that, as used in that code, " 'Shall' is mandatory and 'may' is permissive." In Business and Professions Code section 10176, the Legislature has used the words "may" and "shall" in the same sentence, obviously to establish different duties on the part of the commissioner. Section 10176 clearly contemplates that the commissioner has a mandatory duty to investigate complaints that are submitted in writing and are verified but that the commissioner retains discretion whether to investigate in other circumstances. Here "the statutory language makes quite clear that the Legislature intended the statutory requirements to be obligatory rather than permissive . . . ." (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 910.) We hold that, where the commissioner receives a verified complaint in writing, Business and Professions Code section 10176 imposes a mandatory duty on the commissioner, within the meaning of Government Code section 815.6, to investigate the actions of any person accused in the complaint who is engaged in the business or acting in the capacity of a real estate licensee within this state.

The commissioner contends our holding contravenes *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752 [6 Cal.Rptr. 813] and *Ascherman* v. *Bales*

---

through real estate agents or salesmen.

"(d) Acting for more than one party in a transaction without the knowledge or consent of all parties thereto.

"(e) Commingling with his own money or property the money or other property of others which is received and held by him.

"(f) Claiming, demanding, or receiving a fee, compensation or commission under any exclusive agreement authorizing or employing a licensee to perform any acts set forth in Section 10131 for compensation or commission where such agreement does not contain a definite, specified date of final and complete termination.

"(g) The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit or the failure of a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation, commission or profit under any agreement authorizing or employing such licensee to do any acts for which a license is required under this chapter for compensation or commission prior to or coincident with the signing of an agreement evidencing the meeting of the minds of the contracting parties, regardless of the form of such agreement, whether evidenced by documents in an escrow or by any other or different procedure.

"(h) The use by a licensee of any provision allowing the licensee an option to purchase in an agreement authorizing or employing such licensee to see, buy, or exchange real estate or a business opportunity for compensation or commission, except when such licensee prior to or coincident with election to exercise such option to purchase reveals in writing to the employer the full amount of licensee's profit and obtains the written consent of the employer approving the amount of such profit.

"(i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing.

"(j) Obtaining the signature of a prospective purchaser to an agreement which provides that such prospective purchaser shall either transact the purchasing, leasing, renting or exchanging of a business opportunity property through the broker obtaining such signature, or pay a compensation to such broker if such property is purchased, leased, rented or exchanged without the broker first having obtained the written authorization of the owner of the property concerned to offer such property for sale, lease, exchange or rent."

(1969) 273 Cal.App.2d 707 [78 Cal.Rptr. 445]. Both cases hold a prosecutor has no mandatory duty to initiate a prosecution pursuant to Government Code section 26501, which provides in pertinent part: "The district attorney shall institute proceedings before magistrates for the arrest of persons charged with or *reasonably suspected* of public offenses *when he has information* that such offenses have been committed." (Italics added.) *Taliaferro* makes clear that the emphasized language of section 26501 refutes any legislative intent to impose a mandatory duty on a prosecutor: "[A]lthough Government Code section 26501 uses the sometimes mandatory 'shall' in defining the district attorney's duty to institute proceedings, the use is qualified by the ensuing clauses that imply that he, the district attorney, reasonably suspects a person charged with crime and has information to cause him to believe that an offense has been committed." (*Taliaferro, supra,* 182 Cal.App.2d at p. 757.) *Taliaferro's* reading of the statute was followed in *Ascherman, supra,* 273 Cal.App.2d at page 708. We find no language in Business and Professions Code section 10176 analogous to the language of discretion in Government Code section 26501; *Taliaferro* and *Ascherman* are therefore inapposite.[6]

■ Plaintiffs argue further that Business and Professions Code section 10176 is intended to protect against the risk of injury they suffered, to wit, the unlawful appropriation of funds by a licensee. Once again, we agree.

One of the purposes of the Real Estate Act, of which Business and Professions Code section 10176 is a part, is to insure, as far as possible, that real estate licensees will be honest and truthful in their dealings with members of the public. (*Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901]; *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18, 31-32 [7 Cal.Rptr. 328].) Investigations required by Business and Professions Code section 10176 serve to initiate a process by which dishonest acts of real estate licensees can be discovered. Section 10176 therefore intends to protect members of the public, such as plaintiffs, from what happened to them: the dishonest appropriation of funds of a client by a real estate licensee.

■ Finally, plaintiffs contend the commissioner's failure to investigate the Robinson complaint was the lawful proximate cause of their loss. It is at this point that our path diverges from plaintiffs'. Unlike Robert Frost, however, we take the path more travelled by.

---

[6]The instant case is closer to *Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671 at pages 675-676 [227 P.2d 14], where the Supreme Court held that a district attorney had a mandatory duty to institute proceedings under the Red Light Abatement Act, upon request of a board of supervisors, where former section 731 of the Code of Civil Procedure provided in pertinent part that "such district attorney . . . must bring such action whenever directed by the board of supervisors . . . ." As we point out, *post,* the duty to investigate is not *the same* as the duty to institute an action.

The instant case is governed by our prior decision in *Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d 698, which was approved by our Supreme Court, albeit on other grounds, in *Williams* v. *State of California* (1983) 34 Cal.3d 18 at page 22 [192 Cal.Rptr. 233, 664 P.2d 137] and in *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 at page 202 [185 Cal.Rptr. 252, 649 P.2d 894]. In *Whitcombe,* plaintiffs alleged that probation officers negligently failed to supervise and report the conduct of a violence-prone probationer. As a result the probationer remained on probation and eventually injured plaintiffs. Positing liability on Government Code section 815.6, plaintiffs contended, inter alia, that probation officers breached a mandatory duty contained in Penal Code section 1203.12, which provides in relevant part that, "The probation officer shall . . . report to the court . . . any violation or breach of the terms and conditions imposed by such court on the person placed in his care." (*Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d at p. 707.)

Concluding that plaintiffs could not show proximate cause as a matter of law, we said: " ' "Proximate cause is legal cause, as distinguished from the laymen's notion of actual cause, and is always, in the first instance, a question of law." ' (*Golden* v. *Dungan* (1971) 20 Cal.App.3d 295 [97 Cal.Rptr. 577]; *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898 [5 Cal.Rptr. 28].) Proximate cause ' "is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred." ' (*Kettman* v. *Levine* (1953) 115 Cal.App.2d 844 [253 P.2d 102].) [¶] Granting or revoking probation is within the discretion of the trial court. While the court must consider a probation officer's report, it is not bound by that report and recommendation, or, indeed, the record of the case. Rather, '[i]t must be guided by considerations pertaining to psychology, sociology and penology, or, in the words of the code, to "the ends of justice"; by general rules of policy which have not been and in the nature of the case should not be crystallized into positive or definite rules of law.' (*People* v. *Jones* (1927) 87 Cal.App. 482, 497 [262 P.361].) [¶] In view of the latitude accorded the trial court, appellants' argument that defendants' alleged inaction in keeping and presenting reports about Gibson precluded the court from revoking Gibson's probation and thus proximately caused their injuries, is specious. Even had the court reviewed Gibson's record, it remained under no obligation to revoke probation." (*Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d at pp. 707-708.)

Here, even had the commissioner used due care to investigate the Robinson complaint, and had discovered Stuart's wrongdoing, there is no reasonable assurance that sanctions would have been imposed that would have prevented plaintiffs' subsequent losses. At this point, the nature of the com-

missioner's mandatory statutory duty becomes crucial. Business and Professions Code section 10176 places a mandatory duty on the commissioner to *"investigate"* in appropriate circumstances. "Investigate" means "to track, trace . . . to observe or study closely: inquire into systematically . . . ." (Webster's Third New Internat. Dict. (1981) p. 1189.) The commissioner's mandatory statutory duty to "investigate" the Robinson complaint may not reasonably be read as imposing a mandatory duty on the commissioner to *take action* in the event the commissioner's investigation discloses evidence of wrongdoing. Indeed, the Business and Professions Code specifically allows the commissioner discretion as to what action, if any, he deems appropriate to deal with transgressing licensees.

For example, the commissioner *may* initiate proceedings to suspend or permanently revoke a real estate license in a proper case. (See Bus. & Prof. Code, §§ 10130, 10165, 10175, 10176; *People* ex rel. *Savage* v. *L. A. Trust Deed etc. Exchange* (1961) 190 Cal.App.2d 66, 78 [12 Cal.Rptr. 144]; compare *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577, 581-582 [124 Cal.Rptr. 305].) A real estate licensee investigated by the commissioner has a right to a quasi-judicial evidentiary hearing prior to suspension or revocation of the license. (Bus. & Prof. Code, § 10100; Gov. Code, §§ 11500, 11501.) Following the hearing, the hearing officer makes recommendations to the commissioner, who *may* accept or reject the recommendations. (Gov. Code, § 11517; see Bus. & Prof. Code, § 10175; *Rylander* v. *Karpe* (1976) 60 Cal.App.3d 317, 320 [131 Cal.Rptr. 415].) A licensee dissatisfied with the administrative decision can compel judicial review. (Gov. Code, § 11523; see *Rylander* v. *Karpe, supra.*)

These provisions make it clear that the commissioner retains a discretionary power to pursue disciplinary measures against a licensee. Moreover, he cannot act unilaterally to suspend or revoke a license; rather, suspension or revocation can occur only following a formal adjudicatory process at which accusations have to be proved by the Department of Real Estate, not by the accused. (*Rylander* v. *Karpe, supra,* 60 Cal.App.3d at p. 322.) In addition, had the accusations been sustained, and had the commissioner exercised his discretionary power to impose discipline (see Bus. & Prof. Code, § 10175), that discipline could have been in the form of a license suspension for as little as 15 days (see *Rylander* v. *Karpe, supra*)—a penalty that would not have had any obvious effect on plaintiffs' losses.

In short, several procedural steps lie between an initial investigation that discloses evidence of wrongdoing and any eventual imposition of effective

sanctions against an offending real estate agent.[7] The causal link is thus tenuous at best.[8]

■■■■ The limited nature of the commissioner's duty to "investigate," and its relationship to proximate cause, distinguish this case from *S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)* v. *United States* (9th Cir. 1982) 692 F.2d 1205 (cert. granted *sub nom. United States* v. *S. A. Empresa de Viacao Aerea Grandense (Varig Airlines)* (1983) 461 U.S. 925 [77 L.Ed.2d 296, 103 S.Ct. 2084]) and *United Scottish Insurance* v. *United States* (9th Cir. 1982) 692 F.2d 1209 (cert. granted *sub nom. United States* v. *United Scottish Insurance Co., et al.* (1983) 461 U.S. 925 [77 L.Ed.2d 296, 103 S.Ct. 2084]), relied upon by plaintiffs.[9] For present purposes, we assume, arguendo, the cases were correctly decided.

In both cases plaintiffs brought suit against the United States under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) for damages following

---

[7]As we point out in part II, *post,* plaintiffs cannot contend the commissioner had a duty to warn them of Stuart's misconduct. They have failed to plead they relied to their detriment on the commissioner's duty to investigate the Robinson complaint; consequently, they cannot invoke a specific duty on the part of the commissioner to warn them. (See *Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.)

[8]We note parenthetically that to the extent plaintiffs pursue a theory of proximate cause, they paint themselves into an immunity corner. The failure of the commissioner to investigate, in and of itself, had no bearing on plaintiffs' losses; their argument must be that had the commissioner investigated, he would have taken action to prevent their losses. One such form of action is the revocation or suspension of Stuart's license, but the commissioner is specifically immunized from liability for his discretionary failure to suspend or revoke a license pursuant to Government Code section 818.4. (See Bus. & Prof. Code, § 10175; *Department of Motor Vehicles* v. *Superior Court* (1980) 105 Cal.App.3d 537, 541 [164 Cal.Rptr. 379]; compare *Morris* v. *County of Marin, supra,* 18 Cal.3d at pp. 911-912.) A second remedy available to the commissioner was to bring an action for an injunction pursuant to Business and Professions Code section 10081.5. Section 10081.5 clearly gave discretionary powers to the commissioner to institute an action, and any failure to do so was immunized by Government Code section 818.2, which shields a public entity from liability for failing, *in its discretion,* to enforce any law. (See *Morris* v. *County of Marin, supra,* 18 Cal.3d at pp. 916-917; *People* ex rel. *Savage* v. *L. A. Trust Deed etc. Exchange, supra,* 190 Cal.App.2d at p. 78.) Consequently, plaintiffs' proximate cause argument leads them inexorably into immunities that insulate the commissioner from liability.

[9]The Supreme Court's granting of a petition for writ of certiorari did not vacate these opinions. A writ of certiorari is a writ issued from a superior to an inferior court or tribunal commanding the latter to send up the record of a particular case. (14 C.J.S. (1939) Certiorari, § 1, p. 121; see 14 Am.Jur.2d (1964) Certiorari, § 1, p. 777.) Unlike the granting of a petition for hearing by the California Supreme Court, which serves to vacate a court of appeal opinion (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 617, pp. 4540-4541), the issuance of a writ of certiorari from the United States Supreme Court does not vacate an opinion of the United States Court of Appeals. Pending the high court's decision, a circuit court of appeals opinion remains the law of the case (see *Knauff* v. *Shaughnessy* (S.D.N.Y. 1949) 88 F.Supp. 607, 609, affd. 179 F.2d 628) and is binding upon federal district courts within the circuit (*Lakeside Community Hospital* v. *Tahoe Regional* (D.Nev. 1978) 461 F.Supp. 1150, 1153).

airplane crashes. Relying on California tort law, plaintiffs contended the Federal Aviation Administration (F.A.A.) negligently inspected and certified aircraft for flight and that the negligent inspection and certification failed to disclose defects in the aircraft that caused the planes to crash.

In *S. A. Empresa, supra,* 692 F.2d 1205,[10] the Ninth Circuit concluded that the F.A.A. had undertaken the inspection and certification of a civilian aircraft, that the Federal Aviation Act of 1958 provided for mandatory certification of design and performance characteristics of aircraft so inspected (see 49 U.S.C. § 1423), that the F.A.A. had promulgated design criteria for certification of aircraft, and that the plane in question had been certified for flight even though it contained design components that violated F.A.A. regulations. (*S. A. Empresa de Viacao Aerea Rio Grandense* v. *United States, supra,* 692 F.2d at pp. 1207-1208.) Had the design defects been known, the plane would have been "grounded." (*Ibid.*) Accordingly, in *S. A. Empresa,* had the F.A.A. inspection been done with due care and the design defects disclosed, the plane could not have been lawfully certified for flight and could not have gotten off the ground. There was therefore no question but that the F.A.A.'s negligent inspection and certification of the plane was a proximate cause of the plane's crash landing.

 Here the commissioner's mandatory duty to investigate Stuart's actions is arguably comparable to the F.A.A.'s duty to inspect. However, as we have seen, the commissioner has no duties corresponding to the F.A.A.'s duties of mandatory certification or grounding. The commissioner's statutory duty to inquire into Stuart's activities may not be equated with a duty to "certify" Stuart's honesty. Nor did the commissioner have any duty to "ground" Stuart in the event an investigation disclosed evidence of Stuart's wrongdoing.

We conclude the commissioner's failure to investigate cannot be a lawful proximate cause of plaintiffs' injuries. (*Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d at pp. 707-708.) Therefore, the trial court acted in excess of its jurisdiction in overruling petitioner's demurrer to plaintiffs' fourth cause of action.

## II

 Petitioner also contends its demurrer should have been sustained as to plaintiffs' fifth cause of action. There, plaintiffs allege the commissioner

---

[10]*S. A. Empresa* involved the inspection and certification of aircraft design. (See 49 U.S.C. § 1423(b).) *United Scottish Insurance* involved the inspection and certification of a plane for "airworthiness." (See 49 U.S.C. § 1423(c).) However, the analysis in *United Scottish Insurance* written by the same justice, simply tracks that in *S. A. Empresa.* (See *United Scottish Insurance* v. *United States, supra,* 692 F.2d at pp. 1210-1211.)

was negligent when, after investigating the King complaint and finding irregularities in Stuart's business, he (1) failed to monitor Stuart's continued operations, and (2) failed to warn plaintiffs of the ongoing irregularities. Plaintiffs allege that, as a proximate result of these failures, they continued to make payments to Stuart and that Stuart converted the funds to his own use.

As we pointed out in part I, *ante,* we are aware of no "enactment" that placed a mandatory duty on the commissioner to take action following an investigation. Our Supreme Court has recently addressed the scope of liability of public entities for their alleged negligent failure to aid or warn a citizen in two cases in which no "enactment" placed a duty on the public entity to take such action.

In *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, plaintiff, a woman, was stabbed in a laundromat that was under police surveillance. Her complaint alleged that police officers knew of other stabbings in the same or nearby laundromats, knew that plaintiff was in the laundromat, and identified a man on the premises as a likely perpetrator of a stabbing that occurred the evening before. As officers watched, the suspect entered and left the laundromat several times. The officers neither intervened nor warned plaintiff, and she was stabbed. Her complaint alleged causes of action for intentional and negligent infliction of emotional distress, negligent investigation, failure to protect, and failure to warn. Concluding the officers owed no duty to plaintiff, the court held her complaint stated no causes of action for negligence. (P. 209.)[11]

In *Williams* v. *State of California, supra,* 34 Cal.3d 18, plaintiff filed a complaint alleging she was injured when a heated brake drum from a passing truck was propelled through her windshield and hit her. She further alleged that unnamed agents of the state who investigated the accident were negligent in failing to test the heat of the brake drum, failing to secure the identification of witnesses, and failing to attempt investigation of the owner or occupant of the truck whose brake drum had caused her injuries. The Supreme Court held that judgment on the pleadings was properly entered for the state but that plaintiff should be allowed an opportunity to amend in light of the misunderstanding of all participants in the trial court as to the applicable law. (P. 28.)

Both *Davidson* and *Williams* recognize that an analysis of the possible liability of a public entity for failure to aid or warn a citizen starts

---

[11]The court also held "as a matter of law . . . on the alleged facts the officers' conduct did not rise to the level of outrageous conduct" necessary to state a cause of action for intentional infliction of emotional distress. (*Davidson, supra,* at p. 210.)

with the question of whether the entity, or its agents, owed a duty of care to plaintiff in the circumstances alleged. (See *Williams* v. *State of California, supra,* 34 Cal.3d at p. 22; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 201-202.) "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. (Rest.2d Torts, § 314; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 554, p. 2821.) Also pertinent to our discussion is the role of the volunteer who, having no initial duty to do so, undertakes to come to the aid of another— the 'good Samaritan.' He is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. (Rest.2d Torts, § 323.)" (*Williams, supra,* 34 Cal.3d at p. 23.) "[W]hen the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization." (*Id.,* at p. 24.)

In common parlance, the assumption of a duty by the public entity and detrimental reliance thereon by a citizen create a "special relationship" between the public entity and the citizen sufficient to impose a duty of due care on the public entity. (*Williams, supra,* at p. 25; see *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 202-203.)

 It is clear, however, that where, as here, the public entity neither creates the peril nor acts affirmatively so as to increase the risk to plaintiffs, detrimental reliance by a citizen on the statements or conduct of a public entity is essential to the creation of a "special relationship." (*Williams, supra,* 34 Cal.3d at p. 27.) "This does not mean that a promise and reliance thereon are indispensable elements of a special relationship. Such a relationship has also been found when the *conduct* of a police officer, in a situation of dependency, results in detrimental reliance on him for protection." (*Id.,* at p. 25, italics in original; *Davidson, supra,* 32 Cal.3d at pp. 208-209.)

In the instant case, plaintiffs have failed to plead that they relied on any statements or conduct of the commissioner to protect them from Stuart. Nothing in their complaint indicates the commissioner lulled them "into a false sense of security . . . ." (*Williams, supra,* 34 Cal.3d at p. 25; see *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82].) On the facts pleaded, the commissioner owed no duty of care to protect plaintiffs by monitoring Stuart's conduct or by warning them of Stuart's wrongdoing.

In addition, we conclude it would be bad policy to impose on the commissioner a duty to warn in the circumstances of this case. (See *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 208-209 [imposition of duty to warn victim of potential assault held bad policy as tending to "paralyze a neighborhood"].) Plaintiffs ask that we impose a duty on the commissioner to warn clients of a real estate agent of evidence of the agent's wrongdoing disclosed during an investigation and without any adjudicatory hearing. Such a warning to clients could obviously have a disastrous impact on an agent's reputation and business; it would constitute a form of discipline at least as potent as more formal sanctions such as suspension of a license. Therefore, to require the commissioner to warn clients of unproved wrongdoing by a licensed agent would nullify the statutory policy that a licensee has a right to a quasi-judicial hearing before discipline is imposed. (See Bus. & Prof. Code, § 10100; Gov. Code, §§ 11500, 11501.)

Finally, plaintiffs rely upon *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461], decided before either *Davidson* or *Williams.* In *Green,* plaintiffs' complaint alleged that police officers arrested an automobile's driver for driving under the influence but let two intoxicated passengers remain in the car. The officers failed to remove the car's keys and one of the passengers started the car, drove away, and caused a fatal collision. The Court of Appeal reversed a judgment of dismissal entered after the sustaining of a demurrer without leave to amend. (P. 91.) In the instant case, plaintiffs argue that *Green* controls because the commissioner failed to take away Stuart's "keys" by monitoring his activities.

We find *Green* distinguishable. There, plaintiffs pleaded that enactments of the city and its police department imposed a mandatory duty to disable the automobile, to impound the automobile, or to remove the keys from the automobile. (*Green, supra,* 117 Cal.App.3d at pp. 89-90.) Since the officers' duty to remove the car keys was predicated on an enactment imposing a mandatory duty pursuant to Government Code section 815.6, plaintiffs in *Green* did not have to plead the existence of any special relationship in order to create a duty of care.

We conclude plaintiffs' complaint fails to state facts sufficient to constitute a cause of action against petitioner. (Code Civ. Proc., § 430.10, subd. (e).) Accordingly, we will treat the petition for writ of prohibition as one for writ of mandate (see *Simmons* v. *Superior Court* (1950) 96 Cal.App.2d 119, 133 [214 P.2d 844, 19 A.L.R.2d 288]) and issue a peremptory writ commanding the trial court to sustain petitioner's demurrer. However, because the demurrer was to plaintiffs' original complaint, and because *Williams* v. *State of California, supra,* was not decided when the trial court ruled on the demurrer, fairness requires that plaintiffs' be allowed to amend their

complaint should they ask for leave to do so. (See *Williams* v. *State of California, supra,* 34 Cal.3d at p. 28.)

DISPOSITION

Let a peremptory writ of mandate issue commanding respondent Superior Court of Sacramento County to enter an order sustaining petitioner's demurrer to the complaint of real parties in interest.

Puglia, P. J., and Sparks, J., concurred.