Filed 5/13/26

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAY MARIE GIBBS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF HUMBOLDT et al.,<br><br>    Defendants and Respondents. | A173637<br><br>(Humboldt County<br>Super. Ct. No. CV2301390) |

Plaintiff Kay Marie Gibbs, a former employee of defendant Humboldt County, was a court reporter who worked for the Humboldt County Superior Court for almost 40 years. As she neared retirement, she learned that the county had failed to enroll her in the California Public Employees' Retirement System (CalPERS) during the early years she was working for the court. Her first and second amended complaints against the county and three individual county employees alleged a Kafkaesque scenario in which bureaucratic impediments, indifference, or malfeasance thwarted her attempts to resolve the problem.

The trial court sustained defendants' demurrers to the complaints and denied her the opportunity to file another amended complaint. On appeal,

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B.3 and II.B.4.

Gibbs argues that the court erred in doing so.  We largely agree and therefore reverse.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Gibbs's first and second amended complaints, and we accept them as true in reviewing whether the trial court properly sustained defendants' demurrers.  (*Center for Environmental Health v. Perrigo Co.* (2023) 89 Cal.App.5th 1, 13–14.)

Gibbs began working as a court reporter for the Humboldt County Superior Court in June 1982.  She became eligible to be enrolled in CalPERS in December 1983, but the county failed to enroll her until November 1989.

In 2019, Gibbs began preparing for retirement in early 2020 and discovered she would not receive CalPERS service credit for the early years she worked for the court.  CalPERS told her it could not adjust her employment benefits without a certification from the county of her full employment history with the court.

Gibbs attempted to have the county provide the certification to CalPERS or to obtain her employment records herself, but her efforts were unsuccessful.  She alleged that the individual defendants[1] "lost, destroyed, authorized the destruction of, failed to preserve, search for, or retrieve the requested records."  After repeated promises by county employees to continue searching for the records, the county in October 2020 finally sent CalPERS "an incomplete compilation of [Gibbs's] pay period details."  This compilation reported that Gibbs's employment records were missing for three periods: December 18, 1982, through April 4, 1987; April 19, 1987, through July 23,

---

[1] The individual defendants are Zachary O'Hanen, Linda Catherine Le, and Kara Fales, employees of the county's human resources department.

2

1988; and November 26 through December 23, 1989. Gibbs alleged that also missing were records from a fourth period—July 3 through October 10, 1982.

In November 2021, Gibbs filed a notice of claim against the county for failing to enroll her in CalPERS from December 1983 to November 1989 and for failing to certify to CalPERS, or to provide her with, the requested employment information. She received no response.

Gibbs tried to mitigate the injury caused by the county's failure to timely enroll her into CalPERS by purchasing "prior service credit" for credit for time spent in government service while not enrolled in CalPERS. But she was unable to purchase this credit because defendants would not certify to CalPERS, or give Gibbs, a record of her full employment history.

As a result of the county's failure to enroll her in CalPERS, and its subsequent inability to provide the necessary information to enable her to purchase prior service credit, Gibbs claims she was forced to delay her retirement and is losing "hundreds of thousands of dollars in retirement benefits."

In her first amended complaint, Gibbs asserted four causes of action alleging that defendants failed to discharge mandatory duties under Government Code section 815.6.[2] The first cause of action alleged that defendants failed to maintain certain CalPERS-related records as required under section 31599. The second cause of action alleged that defendants failed to allow her to inspect her personnel records as required under section 31011 and failed to maintain them as required under Labor Code section 1198.5, subdivision (c)(1). The third cause of action alleged that defendants failed to timely enroll Gibbs in CalPERS as required under section 20283. The fourth cause of action alleged that defendants failed to

---

[2] All undesignated statutory references are to the Government Code.

3

properly maintain her employment information as required under sections 26205 and 26205.1. In addition to the four causes of action brought under section 815.6, Gibbs asserted a fifth cause of action alleging negligence on the part of all defendants. She requested wide-ranging relief, including an injunction requiring the county to give her a "full copy" of her employment records, special or compensatory damages "including loss of employment benefits," general damages, interest, attorney fees, and costs.

Defendants filed a demurrer. In response, Gibbs conceded that her first and fourth causes of action (failure to maintain records under section 31599 and failure to maintain employment information under section 26205) failed to state claims as pled, but she sought leave to amend the fourth cause of action by adding as a defendant the Humboldt County Board of Supervisors. The trial court sustained the demurrer as to both of these causes, as well as the other two causes brought under section 815.6, without leave to amend. The court also sustained the demurrer as to the negligence cause of action, but it gave Gibbs leave to amend it.

Gibbs then filed the second amended complaint, which alleged a single cause of action for negligence and added specific allegations regarding the individual defendants' negligence in losing, mishandling, and failing to retrieve Gibbs's records. The prayer for relief again sought, among other things, compensatory or special damages (including loss of employment benefits), as well as an injunction requiring the production of "a full copy of Plaintiff's personnel records." Defendants again filed a demurrer. After giving the parties an opportunity to submit further briefing on any statutory duty to support Gibbs's negligence claim, the trial court ultimately sustained the demurrer without leave to amend, ruling that "no statutory authority [was] cited" to support defendants' duties to exercise reasonable care in

4

preserving Gibbs's records and to timely enroll her into CalPERS. The court's order ends with the observation that "[i]n regards to reviewing any withheld records, a simple mandamus will suffice." ~(CT 225)~

## II.
### DISCUSSION

If the allegations in the amended complaints are true, Gibbs is not receiving the full retirement benefit to which she is entitled. Every time she sought assistance from the county to fix the problem, Gibbs was met with a tepid or unhelpful response, or no response at all. While at this stage in the proceedings no fact finding has occurred, defendants do not suggest that Gibbs was not working or not entitled to be enrolled in CalPERS during the relevant periods. Yet the trial court dismissed her claims, chiding her for searching for "lost or ancient payment history records of a public employee within the State of California, which has hired millions of people throughout its history."

The upshot of the trial court's rulings is that Gibbs, who alleged that the county failed to enroll her in CalPERS through no fault of her own, has no claim against the county because it, again through no fault of hers, lost or destroyed her employment records. We find this result untenable, and we conclude that Gibbs has stated viable causes of action. Specifically, we hold in the published portion of our opinion that she has stated two causes of action against the county under section 815.6 for violation of its mandatory statutory duties. In the unpublished portion of our opinion, we hold that Gibbs has stated a negligence cause of action based on the individual defendants' direct liability and the county's vicarious liability.

5

*A. General Legal Principles*

       1.      Standard of review

We review de novo a judgment of dismissal after a demurrer is sustained without leave to amend. (*Brown v. County of Los Angeles* (2014) 229 Cal.App.4th 320, 322.) In doing so, "[w]e decide independently whether the facts alleged in the complaint suffice to state a cause of action. [Citation.] ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' [Citation.] To decide if a trial court abused its discretion in making its ruling without leave to amend, we assess 'whether there is a reasonable possibility that the defect can be cured by amendment.' [Citation.] The burden of identifying new allegations that could cure a defect rests 'squarely on the plaintiff.' " (*California Dental Assn. v. Delta Dental of California* (2025) 115 Cal.App.5th 142, 152.) The plaintiff " 'may [even] meet this burden [for the first time] on appeal.' " (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132.) Where a trial court sustains a demurrer as to some causes of action and the plaintiff files an amended complaint that does not contain those claims, the plaintiff may challenge the intermediate ruling on the demurrer in an appeal from a subsequent judgment. (*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 44.)

       2.      Governmental immunity and section 815.6

A public entity "is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other

6

person" "[e]xcept as otherwise provided by statute." (§ 815, subd. (a).) One statute that "otherwise" provides for liability is section 815.6, which states that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."[3] "When an enactment establishes a mandatory governmental duty and is designed to protect against the particular kind of injury the plaintiff suffered, section 815.6 provides that the public entity 'is liable' for an injury proximately caused by its negligent failure to discharge the duty. *It is section 815.6, not the predicate enactment, that creates the private right of action.*" (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499–500.)

A three-prong test is used to determine whether the public entity can be held liable under section 815.6: the underlying enactment must impose a mandatory, not a discretionary, duty; the enactment must intend to protect against the kind of risk suffered by the party claiming a breach of the duty; and the breach must be a proximate cause of the injury. (*State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 854 (*Perry*).)

Whether an enactment creates a mandatory duty is a question of law. (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 631–633.) The inquiry turns " 'on legislative intent. [Citations.] In determining

---

[3] For purposes of section 815.6, an "injury" must also be "of such nature that it would be actionable if inflicted by a private person." (§ 810.8.) The county does not contest that Gibbs's alleged injuries are " 'to the kind of interests that have been protected by the courts in actions between private persons.' " (*N.V. Heathorn, Inc. v. City of San Mateo* (2005) 126 Cal.App.4th 1526, 1534.)

legislative intent, "[w]e first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context. [Citations.] These canons generally preclude judicial construction that renders part of the statute 'meaningless or inoperative.' " ' " (*Thornburg v. El Centro Regional Medical Center* (2006) 143 Cal.App.4th 198, 204.)

In contrast to public entities, public employees *are* liable for injuries resulting from their acts or omissions to the same extent as private persons, except where they have been given statutory immunity. (§ 820.) Thus, while public entities are generally immune from claims except when a claim is statutorily authorized, public employees generally can be held liable for claims unless they have been given statutory immunity. Defendants have raised two potential immunities here. Section 820.2 provides that "a public employee is not liable for an injury [when the employee's act or omission] was the result of the exercise of the discretion vested in [the employee], whether or not such discretion be abused." And section 822.2 provides immunity for any injury resulting from employees' misrepresentations made within the scope of employment, absent a finding of fraud, corruption, or actual malice. (See *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 832.)

While public entities cannot be held directly liable for common law negligence, they can be held vicariously liable for the negligence of their employees acting within the scope of employment. (See § 815.2, subd. (a); *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1180.) Still, public entities cannot be held so liable if the employee is immune from liability. (§ 815.2, subd. (b); *Eastburn*, at p. 1180.)

8

Finally, the immunities set forth in the Government Claims Act (§ 815 et seq.), including the ones established in sections 820.2 (discretionary acts) and 822.2 (misrepresentations), do not "affect[] liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." (§ 814.) Therefore, public entities are generally not immune from contract claims and claims for non-monetary relief. Stated another way, the immunity created by section 815 is largely limited to tort claims seeking monetary damages.

### 3. CalPERS considerations

CalPERS is the sole agency responsible for administering the public employees' retirement system for the State of California. (Cal. Const., art. XVI, § 17.) It is governed by the Public Employees' Retirement Law (PERL). (§ 20000 et seq.) Under the PERL, the CalPERS system covers not only state employees but also employees of "contracting agencies," that is, "public entities . . . that have chosen to participate in CalPERS by contract with the CalPERS governing board. (§§ 20022, 20460.)"[4] (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 499 (*Metropolitan*).) CalPERS pension rights constitute "deferred compensation earned immediately upon the performance of services for a public employer." (*Miller v. State of California* (1977) 18 Cal.3d 808, 814.)

The PERL defines a CalPERS " '[m]ember' " as "an employee who has qualified for membership in this system and on whose behalf an employer

___

[4] As of 2020, 38 of the state's 58 counties "either operate[d] an independent retirement system or contract[ed] with [CalPERS]." (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1055.) The remaining 20 counties elected "to implement their pension plans under [the County Employees Retirement Law of 1937; § 31450 et seq.]." (*Ibid.*)

9

has become obligated to pay contributions." (§ 20370, subd. (a); see *Metropolitan*, *supra*, 32 Cal.4th at p. 499.) And a " '[l]ocal miscellaneous member' includes . . . all employees of a contracting agency who have by contract been included within this system, except local safety members." (§ 20383; see *Metropolitan*, at p. 499.)

While an employee enrolled in CalPERS is working, both the employer and the employee are required to contribute financially to the CalPERS system, with the amount of the contributions being based on a percentage of the employee's compensation. (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 989.) Upon retirement, the employee's " 'pension is calculated to equal a certain fraction of the employee's "final compensation" which is multiplied by a fraction based on age and length of service.' " (*Ibid*.) Thus, the length of an employee's service directly affects the amount of that person's pension.

The PERL authorizes CALPERS members to purchase service credit under various circumstances. (E.g., §§ 21020—21039, 21050 et seq.) It is unclear which particular program Gibbs relied on when attempting to purchase credit. CalPERS has issued general guidance about purchasing credit. At one time, CalPERS told potential applicants, "If your employer is unable to complete any required certification, you will not be eligible to purchase the service credit period."[5] More recently, it has directed applicants

---

[5] The quoted passage is from a December 2021 version of "A Guide to Your CalPERS Service Credit Purchase Options." Defendants asked the trial court to take judicial notice of the document. But the trial court did not rule on the request, and defendants have not renewed their request on appeal. After providing notice of its intent to do so, the court now takes judicial notice of the document as a record of an administrative agency that is not reasonably subject to dispute. (Evid. Code, §§ 452, subds. (c) & (h), 459, subds. (a) & (d); *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 [court may

to "[w]ork with" their "employer to ensure they provide the requested certification in a timely manner," and it has stated that the employer is required to provide "the necessary payroll details (i.e. pay rate, earnings, hours worked, etc.) for the [relevant] period."[6]

### B.    Analysis

#### 1.    Gibbs stated a claim that the county wrongfully failed to maintain her personnel records and denied her the ability to inspect them.

Gibbs's second cause of action in her first amended complaint was brought under section 31011, which states that "[e]very employee has the right to inspect personnel records pursuant to Section 1198.5 of the Labor Code."  In turn, Labor Code section 1198.5, subdivision (c)(1), requires employers to "maintain a copy of each employee's personnel records for a period of not less than three years after termination of employment."

These statutes establish mandatory duties that are enforceable under section 815.6.  Under section 815.6's first prong, the statutes impose nondiscretionary duties on the part of public agency employers to allow employees the right to inspect their personnel records and to maintain employees' records until three years after employment ends.  Under section 815.6's second prong, the statutes were clearly designed to provide employees with the right to inspect their personnel records, presumably to

---

take judicial notice of "records, reports and orders of administrative agencies"].)

[6] This language is from a CalPERS online informational publication titled "Service Credit (Time Worked)," under the heading "Service Prior to Membership (SPM)."  (See <https://www.calpers.ca.gov/members/retirement-benefits/service-credit> [updated: June 27, 2025] (as of May 12, 2026).)  The court takes judicial notice of this publication on its own motion after providing the parties with notice.  (*Ante*, fn. 5.)

access their personnel information and guard against or correct errors. And under section 815.6's third prong, an agency's wrongful failure to maintain employee personnel records and denial of access to them can directly and proximately cause the kind of harm—the inability to enforce employee rights and benefits—that Gibbs alleged she suffered in this case.

In reaching our conclusion that section 31011 and Labor Code section 1198.5 are enforceable under section 815.6, we are guided by *Thornburg*. That decision held that a statute giving patients the right to inspect medical records and authorizing the medical provider to charge no more than 10 cents per page for the records created a private right of action for a refund of excessive charges. The appellate court determined that the statutory language "appears to expressly contemplate direct enforcement by patients" and "strongly suggests the Legislature did not intend to restrict the remedies available for enforcement." (*Thornburg v. El Centro Regional Medical Center*, *supra*, 143 Cal.App.4th at p. 204.)

The statutory language here makes it even clearer that the Legislature designed the statutes to provide employees and former employees with a right to enforce their terms. Labor Code section 1198.5 states, "Every current and former employee . . . has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance," and the "employer shall make the contents of those personnel records available for inspection to the current or former employee." (Lab. Code, § 1198.5, subds. (a)(1), (b)(1).) The statute authorizes a $750 penalty against an employer who fails to permit such an inspection, and it provides that "[a] current or former employee may also bring an action for injunctive relief to obtain compliance with this section, and may recover costs and reasonable attorney's fees in such an action." (*Id.*, § 1198.5, subds. (k)–(l).)

12

While we cannot say whether Gibbs's access to her personnel records would ultimately aid her in obtaining a certified work history for purposes of her CalPERS pension rights, we can say she is entitled to access those records and to seek judicial relief for having been denied access.

The county argues that it was relieved of its duty to retain Gibbs's records because as of January 1, 2004, Gibbs became a court employee and was no longer a county employee. It argues that since Labor Code section 1198.5 requires employers to retain employment records for only "three years after termination of employment" (*id.*, subd. (c)(1)), any duty it had to maintain Gibbs's records ended on January 1, 2007. We are not persuaded. While we recognize that Gibbs's employment status changed in 2004, the change did not abrogate the county's obligations.

In advancing its argument, the county correctly observes that "[i]n 1997, the Legislature enacted the Trial Court Funding Act (§ 68070 et seq.) (TCFA), which separated trial courts from counties and provided for direct funding of court operations by the state." (*Orange County Employees Assn., Inc. v. Superior Court* (2004) 120 Cal.App.4th 287, 292.) And it correctly points out that three years later the Legislature enacted the Trial Court Employment Protection and Governance Act (§ 71600 et seq.) (TCEPGA). (*Orange County*, at p. 293.) Prior to passage of the TCEPGA, trial court employees were " 'considered employees of the county' . . . . The TCEPGA changed the status of trial court employees from employees of their respective counties to employees of the trial court." (*Orange County*, at p. 293.) The effective date of the TCEPGA was January 1, 2004. (§ 71615, subd. (a).)

But contrary to the county's argument, the TCEPGA did *not* relieve counties of all of their duties to their former employees. In particular, the county's obligation to retain a copy of Gibbs's "personnel records for a period

13

of not less than three years after termination of employment" (Lab. Code, § 1198.5, subd. (c)(1)) did not end on January 1, 2007, as the county argues, because Gibbs's employment was not terminated by virtue of the TCEPGA. Gibbs worked as a court reporter before the TCEPGA, and she continued to work as one after the law was enacted.

Furthermore, the TCEPGA explicitly provides that "the trial court and the county jointly participating in [the CalPERS] system *shall each have all of the rights and all of the obligations* of a contracting agency under the contract and under this part." (§ 20460.1, subd. (a), italics added; see Stats. 2000, ch. 1010, § 14.) At this stage of the litigation, without knowing the terms of any operable contract, we cannot conclude that these rights and obligations categorically exclude a duty to maintain employee records.

In addition, section 20221 requires contracting agencies to furnish to CalPERS "[a]ny additional information concerning any member that [CalPERS] may require in the administration of [the pension] system," and section 20221.5 requires a contracting agency to "provide information on its employees who are not enrolled as members of the system to assist [CalPERS] to carry out the administration of the system."[7] We recognize that these sections were enacted in 1995 and 2008, respectively. But without knowing the timing or circumstances surrounding Gibbs's missing records, we cannot agree with the trial court that section 20221 (or 20221.5) is necessarily inapplicable because it was enacted "far after the time-period for the requested missing records." The PERL specifically provides that the obligations of a contracting agency regarding its employees "continue through the memberships of the respective members," and the obligations regarding

---

[7] According to Gibbs, CalPERS told her that the county had a duty under section 20221 to provide a record of her employment.

14

retired members "continue until all of the obligations of [the CalPERS] system . . . have been discharged." (§ 20164, subd. (a).)

In short, we reject the county's argument that its duty to provide access to records for its pre-2004 employees, such as Gibbs, was extinguished as a matter of law simply because these employees became court employees with the passage of the TCEPGA.[8]

        2.     Gibbs stated a claim that the county wrongly failed to enroll her into CalPERS.

In her third cause of action in the first amended complaint, Gibbs alleged the county breached its duty to timely enroll her into CalPERS. Specifically, she alleged the county violated section 20283, which describes the consequences to an employer that fails to enroll an employee into CalPERS within 90 days of the employee's eligibility. The statute states, "Any employer that fails to enroll an employee into membership when he or she becomes eligible, or within 90 days thereof, when the employer knows or can reasonably be expected to have known of that eligibility shall be required to pay all arrears costs for member contributions and administrative costs of five hundred dollars ($500) per member as a reimbursement to [CalPERS's] current year budget." (§ 20283, subd. (a).)

We conclude that the PERL imposes a mandatory duty on the part of public agencies that contract with CalPERS to timely enroll employees. In addition to section 20283's description of the consequences to employers who fail to enroll their employees into CalPERS, section 20502 establishes that "[m]embership in [CalPERS] is compulsory for all employees included under a contract" unless they are part of an excluded group. (§ 20502, subd. (a)(3).)

---

[8] In light of our holding, we need not decide Gibbs's undeveloped alternative argument that she was entitled to the records under the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.).

And section 20281 provides that employees of contracting agencies become CalPERS members upon the employees' "entry into employment" or "on the effective date of [the agency's] contract with [CalPERS]." (§ 20281.) Finally, section 20028 defines "employee" under the PERL as "[a]ny person in the employ of a contacting agency." (§ 20028, subd. (b).) The Supreme Court has expressly relied on section 20028, subdivision (b), in recognizing a "duty to enroll employees in CalPERS." (*Metropolitan*, *supra*, 32 Cal.4th at p. 506.)

Under section 815.6's first prong, these statutes impose on agencies a nondiscretionary obligation to enroll employees into CalPERS. To read the obligation as discretionary, and therefore unenforceable, would render the statutes' benefit "illusory." (*Henderson v. Newport-Mesa Unified School Dist.* (2013) 214 Cal.App.4th 478, 494–495 [statute giving temporary teachers who served two or more years "first priority" to be rehired "on its face" created a mandatory duty supporting a private right of action].) As to section 815.6's second prong, the mandatory obligation seems clearly intended to protect against the evident risks of not enrolling employees, including denying employees their pension rights and undermining the system's solvency. (See *Perry*, *supra*, 150 Cal.App.3d at p. 854.) The county has presented nothing to suggest that the statutes were not designed at least in part to ensure that public employees receive the pension benefits they are due. Finally, as to section 815.6's third prong, it goes without saying that an agency's wrongful failure to enroll employees in CalPERS could directly and proximately cause a loss or diminution of their retirement benefits.

In short, the PERL imposes a mandatory duty on the part of public agencies that contract with CalPERS to timely enroll employees and this duty can be enforced under section 815.6.

16

Our holdings on Gibbs's second and third causes of action necessarily reject defendants' argument, raised in their appellate briefing and again at oral argument, that Gibbs's exclusive remedy was to bring a mandamus proceeding. Defendants' reliance on *Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567 is misplaced because that case involved a challenge to a quasi-adjudicatory administrative action by CalPERS following a hearing. (*Id.* at pp. 570–573.) Gibbs's challenge is not to any quasi-adjudicatory action, but it is instead to the county's wrongful failures to enroll her in the pension system and to maintain and give her access to her employment records. At oral argument, defendants' counsel cited *Metropolitan*, *supra*, 32 Cal.4th 491. But that case is also unavailing. In that case, the Supreme Court considered a writ of mandate challenging a legal ruling by the trial court that Metropolitan Water District of Southern California was required to enroll into CalPERS workers who were paid through private labor suppliers. (*Id.* at p. 496.) In the underlying case, the plaintiffs had filed a combined complaint and petition that that sought "writ relief compelling [the water district] . . . to enroll class members in CalPERS." (*Id.* at p. 498.) Thus, while it is true that the plaintiffs in *Metropolitan* sought to compel their enrollment in CalPERS, the case by no means suggests the notion, as defendants urge, that a writ of mandate is necessarily the exclusive remedy in all circumstances where an employee was wrongfully denied CalPERS enrollment.[9]

---

[9] Defendants' counsel also suggested at oral argument that Gibbs could seek relief under section 20160, which permits CalPERS to correct errors or omissions. (E.g., *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 34 [administrative hearing held on city employees' application to CalPERS board to be reclassified as firefighters].) Again, though, Gibbs does not allege any error *on the part of CalPERS*.

17

3. The trial court did not abuse its discretion by denying Gibbs's request to add the Board of Supervisors as a defendant to one of her statutory causes of action.

Gibbs argues that the trial court abused its discretion by not allowing her to add the Humboldt County Board of Supervisors as a defendant to the fourth cause of action in her first amended complaint. We affirm the trial court's sustaining of the demurrer as to this cause because any such amendment would be futile.

Gibbs's fourth cause of action was brought under sections 26205 and 26205.1. Rather than mandating the retention of records, these provisions allow for the destruction, under certain circumstances, of certain non-judicial public records, including "any record, paper, or document that is not expressly required by law to be filed and preserved." While these statutes may reinforce an agency's obligation to retain certain records (those that are "expressly required by law to be filed and preserved"), they do not under their own terms mandate the retention of particular documents, including personnel or pension-related documents. (See *Haggis v. City of Los Angeles*, *supra*, 22 Cal.4th at p. 498 [underlying enactment "must *require,* rather than merely authorize or permit, that a particular action be taken or not taken"].) Furthermore, the statutes do not suggest, let alone establish, that they were " 'designed' to protect against the particular kind of injury" Gibbs suffered. (*Id.* at p. 499.) They therefore fail to satisfy the three-prong test required for them to be enforceable under section 815.6. (See *Perry*, *supra*, 150 Cal.App.3d at p. 854.) In short, even if Gibbs could have "easily" added the Board of Supervisors as a defendant, as she argues on appeal, the fourth cause of action would have still lacked merit.

18

4.  Gibbs stated a claim for negligence based on the individual defendants' failure to retain her records and the county's vicarious liability for the same.

Applying the governmental-immunity principles discussed above, we conclude that Gibbs cannot maintain a common law claim for negligence directly against the county, but she can maintain such a claim against the individual defendants for which the county can be held vicariously liable. Gibbs's negligence cause of action in the second amended complaint stated a claim against the individual defendants by alleging they breached their duties of care (1) by failing to enroll her in CalPERS, (2) by losing, destroying, or failing to maintain her employment records, and (3) by failing to "provide [her] employment records to [CalPERS]."

Despite defendants' conclusory assertions to the contrary, the individual defendants are not immune from these claims under section 820.2, as they have failed to establish that they had any discretion not to enroll Gibbs in CalPERS, not to maintain her records, or not to provide her full employment history to CalPERS. They have similarly failed to establish that the allegations arise out of misrepresentations by the individual defendants. (See § 822.2.)

Although Gibbs stated a viable claim for negligence, we are unpersuaded by her argument that the trial court abused its discretion by "failing to reasonably infer there was a contract between the county and CalPERS." The argument is off point and a distraction. What the court actually did was simply to note that Gibbs "fail[ed] to plead that [the county] entered into a contract with [Cal]PERS" when it rejected her contention that the county contractually assumed a mandatory duty to maintain and produce her records by enrolling her into CalPERS in 1989. In our view, the court was properly reluctant to sanction a contractual basis for Gibbs's claim, as

19

"[t]he terms and conditions of public employment are ordinarily considered to be statutory rather than contractual." (*Cal Fire Local 2881 v. California Public Employees' Retirement System* (2019) 6 Cal.5th 965, 970.) In any event, given our conclusion that the county had mandatory statutory duties to maintain at least some of Gibbs's records and allow her to inspect them, we need not resolve her undeveloped alternative theory that these obligations may have also been a part of the county's contract with CalPERS and triggered when the county eventually enrolled her into the pension system.[10]

Defendants similarly make an off-point argument by contending that the trial court's sustaining of the demurrer as to Gibbs's negligence cause was proper because "there is no duty to guard against 'purely economic losses.' " This is an apparent reference to the economic loss rule, a doctrine that has no application here. "The economic loss rule is a device . . . that courts have developed to address and protect the often elusive boundary line between tort and contract law." (*Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 19.) It "most generally applies to suits between the parties to a contract. But . . . a version of the doctrine may also apply in cases involving parties not in contractual privity, such as when a plaintiff seeks to impose ' " 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.' " ' " (*Id.* at p. 19, fn. 3.)

This case falls within neither category. Gibbs alleged no contract between her and defendants, and the damages she seeks—compensation for having to delay retirement, for not being timely enrolled in CalPERS, and for not being able to mitigate her injury by purchasing credits through an SPM

---

[10] Similarly, we need not address Gibbs's other alternative argument that she should have been allowed to allege a "breach of [an] implied contract and the covenant of good faith and fair dealing."

request—involve "a traditionally compensable form of harm" and do not "threaten[] indeterminate and disproportionate liability." (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 399.) Accordingly, we reject defendants' argument that Gibbs is unable to state a claim as the result of the economic loss rule. And because the rule is inapplicable, we need not resolve the parties' dispute as to whether the complaint alleged an exception to it based on a "special relationship" between Gibbs and defendants.

## III.
### DISPOSITION

The judgment entered following the sustaining of defendants' demurrers is reversed as to the second and third causes of action in Gibbs's first amended complaint and the negligence cause of action in her second amended complaint. The case is remanded to the trial court for further proceedings consistent with this opinion. Gibbs shall recover her appellate costs.

_____

Humes, P.J.

WE CONCUR:


_____

Langhorne Wilson, J.


_____

Smiley, J.


*Gibbs v. County of Humboldt et al.* A173637

22

Trial Court: Humboldt County Superior Court

Trial Judge: Hon. Darren McElfresh

Counsel:

Janssen Mallow LLP, Patrik Griego, Frank J.J.F. Martin for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Michael D. Youril, Lars T. Reed for Defendants and Respondents.

*Gibbs v. County of Humboldt et al.* A173637